**Affirmed in Part, Reversed and Remanded in Part, and Majority Opinion and Concurring and Dissenting Opinion filed May 31, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-00971-CV

---

### CITY OF HOUSTON, Appellant

### V.

### SHAYN A. PROLER, Appellee

---

### On Appeal from the 234th District Court
### Harris County, Texas
### Trial Court Cause No. 2007-30944

---

## C O N C U R R I N G   A N D   D I S S E N T I N G   O P I N I O N

Applicable law imposes a demanding standard for reviewing the sufficiency of the evidence supporting the jury's finding that the City of Houston regarded its firefighter Shayn A. Proler as having a physical or mental impairment that substantially limited a major life activity. Under this tough standard, the trial evidence would not allow reasonable and fair-minded people to find that the City *actually* regarded Proler as having a physical or mental impairment that substantially limited a major life activity. Accordingly, this court should sustain the City's first issue challenging the legal

sufficiency of the evidence, reverse the trial court's judgment in favor of Proler on his counterclaims, and render a take nothing judgment against Proler on these claims.

**Cases construing the pre-amendment Federal Act and Texas Act apply.**

In his counterclaims, Proler alleged that the City discriminated against him based on a perceived disability. He asserted claims under the Americans with Disabilities Act ("Federal Act") and the Texas Commission on Human Rights Act ("Texas Act"). The analysis of the claim under the Texas Act is the same as the analysis of the claim under the Federal Act. *See* Tex. Lab. Code Ann. § 21.001(3) (West 2012); *NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999); *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 752 (S.D. Tex. 2001).

In 2002, the United States Supreme Court held that for a claimant to prove that an impairment substantially limits a major life activity, the record must contain evidence that the impairment has a "permanent or long term" impact on the major life activity. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002). Courts generally have held that evidence of temporary, non-chronic impairments does not satisfy this requirement. *See, e.g., Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998) (quoting 29 C.F.R. § 1630, App., § 1630.2(j), for its statement that "[t]emporary, non-chronic impairments of short duration, with little or no longer term or permanent impact, are usually not disabilities"). But, following the United States Supreme Court's *Toyota Motor* decision, Congress passed the ADA Amendments Act of 2008, which became effective on January 1, 2009. *See* Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). Under these amendments, Congress rejected the restrictive approach established in *Toyota Motor* for analyzing whether the evidence raises a fact issue as to substantial limitation of a major life activity. *See id.* at § 2(b)(5), 122 Stat. at 3554. Although in these amendments Congress left the Federal Act's three-category definition of "disability" intact, Congress made significant changes as to how these categories are to be interpreted and applied. For example, Congress mandated that the term "substantially limits," found in 42 U.S.C. § 12102(1)(A), "shall be interpreted

2

consistently with the findings and purposes of the [Amended Federal Act]." 42 U.S.C. § 12102(4)(B). Congress also mandated that "[t]he definition of disability" be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). The amendments to the Federal Act apply to conduct that occurred on or after January 1, 2009. *See EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 n. 8 (5th Cir. 2009). The Texas Legislature made corresponding changes to the Texas Act that apply to conduct that occurred on or after September 1, 2009. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 337, 2009 Tex. Gen. Laws 868, 870. The conduct at issue in this case occurred no later than 2007; therefore, the 2009 amendments to the Federal Act and the Texas Act do not apply.

Because this lawsuit is a pre-amendment case, the pre-amendment cases apply to the analysis of the City's first issue regarding the legal sufficiency of the evidence. *See Agro Distribution, LLC*, 555 F.3d at 469 n. 8; *Webb v. Houston Community College Sys.*, No. H-08-3779, 2010 WL 1727051, at *10 (S.D. Tex. Apr. 27, 2010). Thus, this court must evaluate the jury's findings in the context of pre-amendment case law.

**The evidence is legally insufficient to support the jury's finding that the City regarded the firefighter as having a mental or physical impairment that substantially limited a major life activity.**

Under its first issue, the City asserts that the evidence is legally insufficient to support the jury's finding that the City regarded Proler as having a mental or physical impairment that substantially limited a major life activity. Given the jury charge, the jury could have made this finding only if it made one or more of the following findings:

1. Proler had a physical or mental impairment that did not substantially limit a major life activity but was perceived by the City as having such a limitation.

2. Proler had a physical or mental impairment that substantially limited a major life activity only as a result of the attitudes of others toward the impairment.

3

3.  Proler did not have an impairment at all, but was regarded by the City as having such a substantially limiting impairment.

Considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, the trial evidence would not enable reasonable and fair-minded people to make the second finding. *See City of Keller v. Wilson,* 168 S.W.3d 802, 823, 827 (Tex. 2005). To make either the first or third finding, the jury had to conclude that the City regarded Proler as having a physical or mental impairment that substantially limited a major life activity. The majority concludes that the evidence is legally and factually sufficient to support a finding that the City regarded Proler as having a physical or mental impairment that substantially limited the major life activity of thinking. Under a faithful application of the pre-amendment cases, the evidence is legally insufficient to support this finding.

The statutory terms in the Federal Act and the Texas Act need to be interpreted strictly to create a demanding standard. *Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 197, 122 S. Ct. at 691. Therefore, this court must conduct a rigorous and carefully-individualized inquiry into Proler's disability claim. *See Waldrip v. General Electric Co.*, 325 F.3d 652, 654 (5th Cir. 2003). Whether the evidence would allow a reasonable jury to find the existence of a disability is determined on a case-by-case basis based on evidence that shows the effect of the impairment on the individual's life. *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 119 S. Ct. 2162, 2169, 144 L. Ed. 2d 518 (1999). Whether an impairment is substantially limiting depends upon what the evidence shows regarding the impairment's nature and severity, its duration or expected duration, and its permanent or expected permanent or long-term impact. *See Dupre v. Charter Behaviorial Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 613 (5th Cir. 2001). The requisite particularized inquiry centers on substantial limitation of major life activities, not mere impairment. *See Waldrip*, 325 F.3d at 656. For example, courts have held that alcoholism is not a disability, despite the effects of alcohol consumption on walking,

4

talking, thinking, and sleeping, because these effects, though serious, are merely temporary. *See id*. "Permanency, not frequency, is the touchstone of a substantially limiting impairment." *Id*.

Proler testified that the March 26, 2006 incident of global transient amnesia was a one-time event that has not recurred. The majority correctly concludes that the evidence is legally and factually sufficient to support a finding that Proler did not actually have a physical or mental impairment that substantially limited a major life activity. But, to overrule the City's first issue, this court also must conclude that, under the applicable standard of review, the trial evidence would allow reasonable and fair-minded people to find that the City *actually* regarded Proler as having a physical or mental impairment that substantially limited the major life activity. *See Waldrip*, 325 F.3d at 656. Significantly, evidence that would allow reasonable and fair-minded people to find that the City *could have* regarded Proler as having a physical or mental impairment that substantially limited a major life activity is not sufficient. *See id*. Proler had to prove that the City in fact regarded him as having a particular impairment that substantially limited a particular major life activity, such as thinking. *See id*. The record must contain evidence that the City regarded the extent of the limitation caused by the perceived impairment to be substantial. *See Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 198, 122 S. Ct. at 691–92; *Waldrip*, 325 F.3d at 656. Our record contains no such evidence.

The majority relies upon evidence regarding the March 26, 2006 incident of global transient amnesia. But, that incident was a one-time event. There is no evidence that would enable reasonable and fair-minded people to find that Proler suffered from global transient amnesia on any other occasion. The evidence regarding the one-time incident is not legally sufficient to support a finding that Proler had a particular impairment that was of a permanent nature or that substantially limited a particular major life activity, like thinking. *See Waldrip*, 325 F.3d at 656 (holding that evidence of temporary effects of pancreatitis did not amount to proof of an impairment that substantially limited a major life activity); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 315–18 (5th Cir. 1997) (holding

evidence was insufficient to raise a fact issue as to whether plaintiff's alcoholism was an impairment that substantially limited a major life activity); *Foreman v. The Babcock & Wilcox Co.*, (holding employee's heart condition with surgically implanted pacemaker did not substantially limit the major life activity of working); *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996) (holding asbestosis sufferer who experienced episodic shortness of breath due to a reduced lung capacity was not substantially limited in the major life activity of breathing); *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1353–54 (9th Cir. 1996) (noting that "[s]everal courts have held that a temporary injury with minimal residual effects cannot be a basis for a sustainable claim under the [Federal Act]" and finding that a psychological impairment lasting just under four months did not qualify as a "disability" for purposes of the Federal Act); *Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92 (5th Cir. 1996) (holding that high blood pressure, alone, without any evidence that it substantially affects one or more major life activities, is insufficient to bring an employee within the protection of the Federal Act); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 & n.11 (5th Cir. 1995) (evidence of a partially crippled arm insufficient to meet the standard of substantially limiting a major life activity). In addition, even under the legal-sufficiency standard of review, this evidence would not enable reasonable and fair-minded people to find that the City regarded Proler as having a particular impairment that substantially limited a particular major life activity. *See Waldrip*, 325 F.3d at 656–57.

A fact issue does not emerge from Chief Trevino's testimony that he made the decision to send Proler to the fire academy in March 2006, based upon other occasions in the past in which Proler was afraid to enter burning buildings to fight fires. There was no evidence at trial that the perceived fear or lack of fortitude that Proler exhibited in prior situations satisfied the exacting standards necessary to qualify as having a physical or mental impairment that substantially limited the major life activity. *See id*. To the extent that Chief Trevino based his decision on a perception that Proler lacked the courage, grit, and fortitude necessary to work in a fire-suppression unit, that perception is not evidence

that the City regarded Proler as having a particular impairment that substantially limited a particular major life activity. *See id.* Chief Trevino, who made the decision to transfer Proler, did not testify that this decision was based upon a belief or perception that Proler had a particular impairment that substantially limited a particular major life activity.

In his letter, Captain Johnson primarily describes some of the events that transpired during the March 26, 2006 incident of global transient amnesia. Captain Johnson also states that "[e]ither [Proler] was scared [expletive] or there was an acute medical emergency that consumed him." Johnson concluded his letter by stating, "I will wait until after the medical test and evaluation to conclude my opinion on what I think caused this behavior. In the mean-while we might not want to put [Proler] in this situation again for safety reasons." Though Captain Johnson's letter indicates that Proler either exhibited a lack of fortitude or had a medical emergency on March 26, 2006, Captain Johnson did not indicate that Proler had a physical or mental impairment that actually and substantially limited a major life activity. In fact, Captain Johnson's letter suggests, for safety reasons, Proler should not work on a fire-suppression unit while Proler's situation was being reviewed. Captain Johnson did not state that Proler should be removed from a fire-suppression unit because of any physical or mental impairment that actually and substantially limited a major life activity.

Chief Seamans, in his letter, describes what happened during the March 26, 2006 incident of global transient amnesia but does not indicate or conclude that Proler had a physical or mental impairment that substantially limited a major life activity. Chief Seamans requested "a full investigation and evaluation of this possibly dangerous situation;" he stated that, "[i]f [Proler] has some type of medical or psychiatric condition that precludes his safe behavior at fire or other emergency scenes, then he should be removed from emergency response work until such time as the situation is resolved." But, Chief Seamans did not conclude that Proler had such a condition, and Chief Seamans went on to describe Proler's history involving reports that Proler had a "fear of firefighting," which is not indicative of a physical or mental impairment that actually and

7

substantially limits a major life activity. Chief Seamans did not make the decision to transfer Proler, and he did not conclude in his letter that Proler had such an impairment. Even presuming that Chief Seamans stated in his letter that Proler should be transferred if he had such an impairment, this statement is not sufficient proof that Chief Trevino later concluded that Proler had such an impairment and transferred Proler based upon this conclusion.

Chief Trevino testified that he transferred Proler until further notice so that Chief Trevino could investigate the situation and determine "what difficulties [Proler] was . . . dealing with." According to Chief Trevino, he told Proler that he would be transferred to the fire academy until further notice because Chief Trevino "needed to talk to some other people . . . to see what we were going to do about it." This testimony does not support the jury's verdict because it indicates that Proler was transferred while the City was investigating the situation rather than because the City had determined that Proler had a physical or mental impairment that substantially limited a major life activity.

The doctor's release of Proler to "full duty" beginning April 1, 2006, is not evidence that the City had made such a determination. Moreover, testimony that a doctor was asked to opine whether the global transient amnesia would recur and that the doctor was not responsive to this inquiry is not sufficient to show that the City was operating under the belief that Proler had a physical or mental impairment that substantially limited a major life activity.

Evidence that Proler was assigned to the fire academy because of a belief (correct or incorrect) that he lacked the courage and fortitude to work safely and effectively in a fire-suppression unit, is not evidence that supports a finding that the City regarded Proler as having a physical or mental impairment that substantially limited a major life activity. *See Dupre*, 242 F.3d at 616 (stating that evidence that an employer believed that the employee is incapable of performing a particular job is not evidence that the employer regards the employee as having a physical or mental impairment that substantially limited a major life activity); *Deas v. River West, L.P.*, 152 F.3d 471, 480 (5th Cir. 1998) (same).

8

Likewise, evidence that Proler was assigned to work at the fire academy while an investigation was being conducted is not evidence supporting such a finding.

The City's firefighters, emergency workers, and other first responders are charged with the grave responsibility of protecting the public, and the public depends on them to safeguard and defend the City's inhabitants against fires and other dangers. For this reason, it is critically important to the safety and welfare of the public and the City's first-responders that the Houston Fire Department be able to act decisively to transfer firefighters away from fire-suppression units when there are valid reasons for doing so. The record evidence shows that the Houston Fire Department had valid reasons for transferring Proler away from the fire-suppression unit, where he had demonstrated a lack of fortitude in fighting fires, to the fire academy, where his skills and experience could be utilized without jeopardizing the safety of the public or his fellow firefighters. More importantly, the record evidence is legally insufficient to support the jury's finding that the City's actions in doing so violated either the Federal or the Texas Act.

The law imposes a demanding standard for reviewing the sufficiency of the evidence supporting the jury's finding. *See Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 198, 122 S. Ct. at 691–92; *Waldrip*, 325 F.3d at 656. Under the applicable standard of review, the trial evidence would not allow reasonable and fair-minded people to find that the City regarded Proler as having a physical or mental impairment that substantially limited a major life activity. *See Waldrip*, 325 F.3d at 657 (holding evidence did not raise a fact issue as to whether employer regarded employee as having a physical or mental impairment that and substantially limited the major life activity); *Dupre*, 242 F.3d at 615–16 (same as *Waldrip*); *Deas*, 152 F.3d at 480–82 (same as *Waldrip*); *Kiser v. Original, Inc.*, 32 S.W.3d 449, 453–54 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (same as *Waldrip*). Therefore, this court should sustain the City's first issue challenging the legal-sufficiency of the evidence, reverse the trial court's judgment in its entirety, and render judgment that Proler take nothing by his counterclaims. Because the court does

9

not do so, I respectfully dissent.[1]


/s/    Kem Thompson Frost
Justice


Panel consists of Justices Frost, Seymore, and Jamison. (Seymore, J., majority).

---

[1] I agree with the majority's analysis and judgment regarding the trial court's order dismissing the City's appeal and declaratory-judgment action for lack of jurisdiction.